**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ALPHONSE J. MENDY and
SHAYLA MENDY,

*Plaintiffs,*

v.

BELL BANK, *et al.*,[1]

*Defendants.*

Case No. 2:26-cv-02278-AWM-JBW

**MEMORANDUM AND ORDER**

In November 2023, Alphonse Mendy borrowed $326,500 from Bell Bank, and he and Shayla Mendy mortgaged a house to secure the loan.[2] That house is at 2923 W. 50th Street in Westwood, Kansas; the Mendys live at 2901 W. 50th Street, a different house on the same street.[3] In February 2026, Bell Bank filed a mortgage-foreclosure action against Alphonse and Shayla Mendy in the District Court of Johnson County, Kansas. After the Mendys paid $43,102.11 (what the Complaint calls a "payoff amount"), the loan was reinstated, and Bell Bank voluntarily dismissed the foreclosure on March 18, 2026, about a month after filing it and without any sale of the property.[4]

---

[1] The defendants are Bell Bank; Bell Bank Mortgage; Bell Bank Servicing; Millsap & Singer, LLC; and Does 1 through 20. Bell Bank states that Bell Bank Mortgage and "Bell Bank Mortgage Servicing"—named that way in the Complaint's caption but called Bell Bank Servicing in its body and on the docket—are divisions of Bell Bank, not separate legal entities. Doc. 14 at 6 n.1. The Court refers to the three collectively as "Bell Bank."

[2] Doc. 14-3 at 2 (Note); Doc. 14-2 (Mortgage). Part II explains why the Court may consider the loan documents in deciding these motions. Citations to the record refer to the page numbers assigned by CM/ECF.

[3] Doc. 14-2 at 2 (identifying the Mendys as "currently residing at" 2901 W. 50th Street); *id.* at 4 (identifying the mortgaged property as 2923 W. 50th Street); Doc. 14-3 at 2 (same); *see also* Doc. 18 at 8–9 (listing 2901 W. 50th Street as each plaintiff's address).

[4] Doc. 5 ¶¶ 68, 125; Doc. 14-4 at 2, 4 (state-court docket).

The Mendys, who represent themselves, then filed this lawsuit against Bell Bank, the law firm that filed the foreclosure—Millsap & Singer, LLC ("M&S")—and twenty unnamed "Doe" defendants. *See* Doc. 5 ¶¶ 16, 23; Doc. 14-4 at 3. Their Complaint asserts ten counts: race discrimination in contracting under 42 U.S.C. § 1981 (Count I); breach of contract (Count II); breach of the duty of good faith and fair dealing (Count III); violations of the Truth in Lending Act ("TILA") (Count IV), the Real Estate Settlement Procedures Act ("RESPA") (Count V), and the Fair Debt Collection Practices Act ("FDCPA") (Count VI); fraud (Count VII); wrongful foreclosure (Count VIII); punitive damages (Count IX); and litigation expenses and attorney's fees (Count X).[5] *See* Doc. 5 at 11–30.[6]

Bell Bank moves to dismiss every count against it for failure to state a claim. Doc. 13. M&S moves to dismiss the one count it reads the Complaint to assert against it—wrongful foreclosure—or, in the alternative, for a more definite statement. Doc. 9. None of the Complaint's federal counts states a plausible claim against any defendant, and each is dismissed without prejudice. Counts IX and X are dismissed because punitive damages and attorney's fees are remedies, not independent claims. With no federal claim remaining, the Court declines to exercise supplemental jurisdiction over the Kansas-law counts and dismisses them without prejudice so that a Kansas court may

---

[5] The Complaint also invokes 42 U.S.C. § 1983, Doc. 5 ¶¶ 6–7, and what it calls the Mendys' "Mennonite Notice rights," *id.* ¶ 54, an apparent reference to the Supreme Court's due-process notice rule. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983). Neither is pleaded as a count, and no defendant is alleged to be a state actor, so neither affects the analysis below.

[6] Alphonse Mendy filed the Complaint on May 11, 2026. Doc. 1. Because Shayla Mendy had not signed that version, the fully signed Complaint was filed on May 22, 2026. Doc. 5. The two are substantively identical, and the docket describes Doc. 5 as the signed version of Doc. 1 rather than as an amended pleading. The Court cites Doc. 5 as the operative pleading.

hear them if the Mendys choose to pursue them. The Court denies the requests for leave to amend embedded in the Mendys' briefs, and the case will be closed.

## I. BACKGROUND

### A. The Loan Documents Identify Collateral Other Than the Mendys' Residence.

The loan documents supply the following facts.[7] On November 16, 2023, Alphonse Mendy signed a promissory note (the "Note") for $326,500, payable to Bell Bank at a fixed yearly interest rate of 7.990% in monthly payments of $2,393.47.[8] Both Mendys signed a mortgage (the "Mortgage") of the same date securing the Note with the property at 2923 W. 50th Street.[9] The Mortgage identifies the Mendys as "currently residing at" 2901 W. 50th Street, a different address on the same street.[10]

Two features of the loan documents matter here. First, a 1-4 Family Rider deletes the covenant that would otherwise require the borrower to occupy the property, and it requires the borrower, on the lender's request after default, to assign to the lender all leases of the property and their security deposits.[11] Second, although the Complaint describes the Mendys' own home at 2901 W. 50th Street as "the Property" at issue, Doc. 5 ¶ 26, the Mortgage and the Note both identify the collateral as 2923 W. 50th Street. Doc. 14-2 at 4; Doc. 14-3 at 2. The documents control over the pleading. *See* Part II.

[7] The Complaint refers to the Note and Mortgage repeatedly. *E.g.*, Doc. 5 ¶¶ 61, 75, 89, 94. Bell Bank attached both documents to its memorandum. Docs. 14-2, 14-3.
[8] Doc. 14-3 at 2. Alphonse Mendy alone signed the Note, *id.* at 4; both Mendys signed the Mortgage, Doc. 14-2 at 14.
[9] Doc. 14-2 at 3–4, 14.
[10] Doc. 14-2 at 2.
[11] Doc. 14-2 at 15 (Rider ¶¶ C, D); *see id.* at 7 (§ 6 occupancy covenant).

**B. Bell Bank Dismissed the Foreclosure Before Any Sale.**

The Complaint alleges the following about the loan's servicing, and for purposes of these motions, the Court accepts these allegations as true. Bell Bank rejected the Mendys' efforts to resolve the default while proposing no alternatives of its own. Doc. 5 ¶ 66. It "dual-tracked" them, "pretending to be helping them with a loan modification or other workout, all the while proceeding with foreclosure at break-neck speed." *Id.* ¶ 73; *see id.* ¶ 136. The Mendys "were forced to liquidate assets to keep defendants from taking their property." *Id.* ¶ 79. After they paid the $43,102.11 that Bell Bank quoted as a "payoff amount," the defendants told them they were still in default on the April 2026 installment, even though Bell Bank also sent them a $422.89 refund reflecting an overpayment. *Id.* ¶¶ 68–69. And after the loan was reinstated, Bell Bank required the Mendys, over their objection, to escrow taxes and insurance, increasing their costs. *Id.* ¶¶ 55(j), 100(c), 126. The Complaint also alleges that the Mendys were told they had to miss two mortgage payments to qualify for a loan modification, that no modification followed, and that the "workout" terms Bell Bank offered would have nearly doubled the monthly payment. *Id.* ¶¶ 55(b), 67.

The state court's records supply the procedural history. Bell Bank filed a petition for mortgage foreclosure against Alphonse and Shayla Mendy, among others, in the District Court of Johnson County, Kansas, on February 17, 2026, as Case No. JO-2026-CV-000410. Bell Bank filed a notice of voluntary dismissal on March 18, 2026, and the case was closed. No sale was ever held.[12] The Complaint alleges the same end point: the "termination of the foreclosure and reinstatement of the Plaintiffs' loan." Doc. 5 ¶ 125.

---

[12] Doc. 14-4 at 2–4. The Court takes judicial notice of these docket entries to establish what was filed and when, without assuming the truth of anything asserted in the state-court filings. *See* Part II.

### C. The Complaint and the Motions to Dismiss.

The Complaint is adapted, with the parties' names changed, from a complaint filed in a Louisiana foreclosure case.[13] That alone is not a reason to dismiss, and the Court has not treated it as one. It does explain why so much of the Complaint describes a different loan, a different foreclosure procedure, and a different set of parties. The Court gives no weight to those allegations that are conclusory or generic or that the loan documents contradict. *See* Part II.

M&S moved to dismiss on June 15, 2026, Doc. 9, and Bell Bank moved on June 23, 2026, Docs. 13, 14. The Mendys responded to each motion, Docs. 16, 18, and each movant replied, Docs. 19, 21. Magistrate Judge Wieland stayed discovery until October 30, 2026. Doc. 22.

## II. LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded facts and draws reasonable inferences in the plaintiffs' favor, but "[t]hreadbare recitals of the

[13] For example, the Complaint describes foreclosure "by executory process" and the appointment of a "curator," which are features of Louisiana procedure with no counterpart in Kansas, and it alleges that defendants caused a "seiz[ure]" and planned a sale "via public auction." It also lays venue in a nonexistent "Eastern District of Kansas." Doc. 5 ¶¶ 12–14, 26, 54–55, 136, 144; *see* 28 U.S.C. § 96 ("Kansas constitutes one judicial district."). It refers in ¶ 16(d) to a "U.S. Bank Trust" that is not a party, and alleges in ¶ 16(b) that Bell Bank Mortgage is a citizen of California. The Complaint's source explains these errors: much of its text tracks, often nearly word for word, the complaint filed in *Jones v. U.S. Bank Tr. Nat'l Ass'n*, No. 2:25-cv-00998 (E.D. La. May 19, 2025), ECF No. 1, a Louisiana foreclosure case brought by different borrowers against different lenders. The Court takes notice of that filing only for its contents. *See* Part II. The resemblance also tells the Mendys what any new complaint must do: allege what happened to them, in their own words, rather than what another borrower alleged happened in another case. The Court draws no other inference from the borrowed pleading and has accepted the Complaint's well-pleaded factual allegations as true.

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Because the Mendys represent themselves, the Court reads their Complaint liberally: "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (footnote omitted). But the Court may not "assume the role of advocate for the pro se litigant," and "conclusory allegations without supporting factual averments are insufficient to state a claim," because "a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury." *Id.*

Generally, "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The exceptions include "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" and "matters of which a court may take judicial notice." *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Two sets of materials outside the Complaint fall within those exceptions, and neither converts the motions into motions for summary judgment under Fed. R. Civ. P. 12(d).

The first set of materials is the Note and Mortgage, Docs. 14-2, 14-3. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381,

1384 (10th Cir. 1997). The Complaint refers to both documents, both are central to every count, and the Mendys do not dispute their authenticity. *See* Doc. 18 at 3–4 (objecting only to the documents' use). And when the Complaint contradicts them, the documents control: "factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *GFF*, 130 F.3d at 1385.

The second set of materials is court records: the docket of the state foreclosure case, Doc. 14-4, and the *Jones* complaint described in note 13. Federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979), but such records "may only be considered to show their contents, not to prove the truth of matters asserted therein," *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). The Court uses those records only for that limited purpose. Beyond these two sets of materials, the Court relies on the Complaint's own allegations, such as ¶ 125's statement that the foreclosure was terminated and the loan reinstated. In particular, the Court has not considered the loan application or the correspondence described in Bell Bank's briefing, Doc. 14 at 10 n.3, because neither is in the record. The Mendys' argument that the motions must be converted under Rule 12(d), Doc. 16 at 2–3; Doc. 18 at 3–4, therefore fails.

## III. ANALYSIS

### A. Count I: The Complaint Pleads Neither But-For Causation nor Intent.

Section 1981 guarantees all persons the same right "to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). A plaintiff must

plausibly allege that (1) he is a member of a protected class, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination interfered with a protected activity as defined in § 1981. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001). And the plaintiff "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). That but-for requirement applies from the start: the causation burden "remains constant" from filing to judgment, and the Supreme Court rejected the suggestion that a more forgiving "motivating factor" standard might govern "only at the pleadings stage." *Id.* at 333, 338.

The Complaint pleads neither but-for causation nor discriminatory intent. On causation, it alleges that the Mendys' treatment "was driven in part by" Alphonse Mendy's race, Doc. 5 ¶ 34, and that the defendants acted "in part because of Plaintiff Alphonse Mendy's race," *id.* ¶ 70. Allegations that race played a part in a decision, unaccompanied by facts suggesting that the decision would not have been made but for race, plead at most the motivating-factor standard that *Comcast* rejected. Apart from a conclusory recital that individuals are treated differently "because of their race or ethnicity," Doc. 5 ¶ 47, the Complaint alleges no facts suggesting that race was the but-for cause of anything Bell Bank did.[14]

On intent, the Complaint offers labels, not facts. It identifies no borrower outside Alphonse Mendy's protected class who was treated better, no race-related statement by anyone at Bell Bank, and no other fact connecting the servicing of this loan to race. Most

[14] The Complaint also invokes Alphonse Mendy's national origin, Doc. 5 ¶¶ 34, 70, but § 1981 does not reach discrimination based on national origin alone. *See Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1029 (D. Kan. 2024) (citing *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)).

of ¶ 55 describes industry-wide practices in generic terms—foreclosing on borrowers who are not in default, advising borrowers to miss payments, padding fees—and the allegations that do describe this loan—the advice to miss two payments, the dual tracking, the post-reinstatement escrow, the disputed April 2026 default, *see* Doc. 5 ¶¶ 55(b), 55(j), 68–69, 73, 100(c), 126, 136—say nothing tying Bell Bank's conduct to race. "[N]aked assertions of race discrimination without any supporting facts" do not state a § 1981 claim. *Vazquez v. Gomez*, No. 21-1263-HLT-KGG, 2022 WL 1597812, at *4 (D. Kan. May 16, 2022); *see Galindo*, 723 F. Supp. 3d at 1025–29 (applying *Comcast* at the pleading stage); *cf. Khalik v. United Air Lines*, 671 F.3d 1188, 1193–94 (10th Cir. 2012) (holding that an allegation that the plaintiff "was targeted because of her race, religion, national origin and ethnic heritage" was conclusory and not entitled to the assumption of truth).

This district applied the same principle in an earlier § 1981 case brought by Alphonse Mendy: "The mere fact that plaintiffs are black does not automatically entitle them to claim that anything that has happened to them has happened because they are black." *Mendy v. AAA Ins.*, No. 17-2322-DDC-GLR, 2017 WL 4422648, at *4 (D. Kan. Oct. 5, 2017) (emphasis omitted) (quoting *Phillips v. Fisher*, 445 F. Supp. 552, 556 (D. Kan. 1977)).

Shayla Mendy's § 1981 claim fails for the same reasons. The Complaint, which alleges that she is white, Doc. 5 ¶ 33, alleges no facts showing discrimination against her on account of her own race or because of her association with her husband. Count I is dismissed without prejudice to the extent it arises under § 1981; Part III.F addresses the Kansas-law theory Count I also invokes.

**B. Counts IV, V, and VI: The Complaint Pleads No Consumer Loan.**

*1. The statutes reach only consumer transactions, and the Complaint pleads none.*

TILA, RESPA, and the FDCPA share a threshold requirement. TILA governs "consumer" credit—credit extended to a natural person "primarily for personal, family, or household purposes," 15 U.S.C. § 1602(i)—and exempts credit extended primarily for business or commercial purposes, *id.* § 1603(1); Regulation Z, 12 C.F.R. § 1026.3(a)(1). RESPA carries the same exemption. 12 U.S.C. § 2606(a)(1); Regulation X, 12 C.F.R. § 1024.5(b)(2). And the FDCPA defines a "debt" as an obligation arising out of a transaction whose subject is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022) (listing as elements of an FDCPA claim that "the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes" and that "the defendant is a debt collector"). These statutes protect people borrowing for their homes and households. They do not cover business loans, including (for purposes of TILA and RESPA) credit to acquire, improve, or maintain rental property that the borrower does not occupy. *See* 12 C.F.R. pt. 1026, Supp. I, cmt. 3(a)-4 (credit extended "to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes"); *see also* 12 C.F.R. § 1024.5(b)(2) (providing that persons "may rely on Regulation Z in determining whether the exemption applies").

The Complaint's only allegation bearing on the loan's purpose is that the Mendys borrowed "for the finance of Property through a mortgage," Doc. 5 ¶ 61, and the Complaint identifies "the Property" as 2901 W. 50th Street, *id.* ¶ 26; *see id.* at 2 (alleging

a scheme "to wrongfully foreclose on Plaintiffs' home"). Read liberally, that is an allegation that the loan financed the Mendys' residence. But the loan documents contradict it, and they control. *See* Part II. As Part I.A explains, the collateral is not the Mendys' residence, and the 1-4 Family Rider deletes the owner-occupancy covenant and requires assignment of the property's leases and security deposits on default, terms drafted for rental property. Doc. 14-2 at 2, 4, 15. Bell Bank raised the point. Doc. 14 at 10–12. The Mendys' response, which itself refers to the collateral as "the Investment Property," Doc. 18 at 5, lists "mixed personal and business purposes" among the "factual determinations" that it says cannot be made on the pleadings, *id.* at 5–6. But it does not assert that this loan had any personal, family, or household purpose, and the Complaint's only allegation of purpose is one the loan documents contradict. Bell Bank reads the response's label as a concession. Doc. 21 at 3. The Court need not go that far, because the pleading defect is enough. Without a plausible allegation of consumer credit, Counts IV, V, and VI fail at the threshold. *See Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1152–53 (D. Kan. 2020) (granting judgment on the pleadings against a pro se borrower's FDCPA claim in part because the complaint did not allege "facts capable of supporting a plausible inference that the debt at issue arose from a transaction entered into for personal, family, or household purposes").

Loan purpose is ultimately a question of fact, so this holding is narrow. *See Gallegos v. Stokes*, 593 F.2d 372, 375 (10th Cir. 1979) (whether a credit transaction fell within TILA's commercial-use exemption "is a factual issue to be resolved by the trier of fact"); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (reversing summary judgment because a genuine dispute existed over whether a loan was a consumer debt under the FDCPA); *cf.* 12 C.F.R. pt. 1026, Supp. I, cmt. 3(a)-3 (listing

factors, including the borrower's statement of purpose). The Court therefore does not hold that this loan is a business loan as a matter of law. It holds only that the Complaint, whose sole allegation of purpose ties the loan to a residence that the loan documents show was not the collateral, does not plausibly plead consumer credit in the face of documents pointing the other way. That is a pleading defect, which is one reason these counts are dismissed without prejudice. *See* Part III.G. And even if the Complaint adequately pleaded consumer credit, Counts V and VI would fail for the independent reasons that follow, and so would Count IV's request for rescission.

*2. Count IV (TILA) rests on boilerplate allegations and pleads no rescission notice.*

Count IV recites a boilerplate list of violations, copied nearly word for word from the *Jones* complaint, *see supra* note 13, some of which the documents contradict: the Complaint alleges disclosure errors involving "discounted ARM Loans" and "open-end lines of credit," Doc. 5 ¶ 100(g)–(h), but the Note is a closed-end, fixed-rate loan. Doc. 14-3 at 2. And Count IV's request for rescission has a second problem that does not depend on the loan's purpose. To the extent Count IV seeks rescission, *see* Doc. 5 ¶¶ 92–98, 106; Doc. 14 at 10, that right applies only to credit secured by the obligor's "principal dwelling," 15 U.S.C. § 1635(a); 12 C.F.R. pt. 1026, Supp. I, cmt. 23(a)(1)-3, and is exercised by notifying the creditor, *see Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 262 (2015); 12 C.F.R. § 1026.23(a)(2). But the loan documents show that the collateral is not the Mendys' residence, *see* Part I.A, and the Complaint alleges no notice of rescission. Count IV is dismissed without prejudice as to Bell Bank; Part III.D addresses M&S.

*3. Count V (RESPA) pleads no violation, dual tracking included.*

Count V identifies no RESPA provision, no qualified written request, and no act or omission that the statute prohibits. *See* Doc. 5 ¶¶ 107–114. It alleges only that the defendants "violated and/or acted in cahoots with one and another to violate RESPA," *id.* ¶ 109, followed by damages allegations, *id.* ¶¶ 110–114. A complaint that does not "point to any specific, actionable RESPA violation" fails to state a claim. *Fowler v. Bank of Am. Corp.*, 747 F. App'x 666, 668 (10th Cir. 2018) (unpublished).

The dual-tracking theory also fails because Regulation X's servicing rules—including the loss-mitigation rules in 12 C.F.R. § 1024.41 on which a dual-tracking claim would rest—do not apply to business-purpose loans at all, *see* 12 C.F.R. §§ 1024.5(b)(2), 1024.30(a), 1024.31 (defining the "mortgage loan[s]" covered by the servicing subpart as subject to § 1024.5(b)'s exemptions), and in any event the loss-mitigation rules "only apply to a mortgage loan that is secured by a property that is a borrower's principal residence," *id.* § 1024.30(c)(2). The Complaint pleads no consumer-purpose loan, and the collateral is not the Mendys' residence. *See* Part I.A. Count V, which the Complaint asserts against the Bell Bank entities and the Doe defendants alleged to be lenders, *see* Doc. 5 ¶ 109, is dismissed without prejudice.

*4. Count VI (FDCPA) fails because the Complaint does not plausibly allege that Bell Bank is a debt collector.*

The FDCPA regulates "debt collector[s]," 15 U.S.C. § 1692a(6), and the definition excludes a person collecting a debt "which was originated by such person," *id.* § 1692a(6)(F)(ii). A lender collecting a loan it originated therefore generally is not a debt collector. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017) (noting the parties' agreement that "those who seek only to collect for themselves loans they

originated generally do not" qualify as debt collectors); *Ladouceur v. Wells Fargo*, 682 F. App'x 649, 652 (10th Cir. 2017) (unpublished) (affirming that Wells Fargo "was not a debt collector" as to loans it originated and serviced). The Note identifies Bell Bank as the lender, Doc. 14-3 at 2. The Complaint's allegation that "Bell Bank Mortgage" originated the loan and assigned it to Bell Bank, Doc. 5 ¶¶ 16(b), 18, is contradicted by the Note, and its references to unidentified "Doe" predecessor and successor holders, Doc. 5 ¶¶ 20–21, are speculation. Count VI also identifies no collection communication that violated the Act: the operative paragraphs allege only that the defendants "violated and or acted in cahoots with one and another to violate the FDCPA," followed by damages allegations. *Id.* ¶¶ 115–122. Although the Complaint elsewhere invokes Regulation F and its validation-notice provision, 12 C.F.R. § 1006.34, *id.* ¶ 27, it alleges no facts showing that anyone failed to provide the validation information that provision requires. The Mendys' response does not address Bell Bank's debt-collector argument. *See* Doc. 18 at 5–6; Doc. 21 at 3. Count VI is dismissed without prejudice as to Bell Bank; Part III.D addresses M&S.

**C. Counts IX and X: Punitive Damages and Attorney's Fees Are Remedies, Not Claims.**

Punitive damages are a form of relief, demanded as part of a claim. Fed. R. Civ. P. 8(a)(3). A request for attorney's fees is likewise a form of relief. The Tenth Circuit has agreed with a district court's ruling that a fee request "does not constitute a new claim or cause of action . . . because the recovery of fees and costs under § 1988 is not a separate action." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1199–1200 (10th Cir. 1998) (quoting the district court's order); *see id.* at 1201 ("We agree."). And under fee-shifting statutes such as 42 U.S.C. § 1988, "a pro se litigant who is not a lawyer is not entitled to

attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *Turman v. Tuttle*, 711 F.2d 148, 149 (10th Cir. 1983) (per curiam). The Mendys' responses do not address either count, *see* Doc. 21 at 5 (noting the omission), so they have also abandoned them. *See C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (plaintiff "abandoned [his facial challenge] by not addressing it in his response to Defendants' motion to dismiss").

Counts IX and X are therefore dismissed as independent counts. Because a remedy rises or falls with the claims on which it depends, the dismissal is without prejudice: nothing in this Order prevents the Mendys from requesting punitive damages—or any fee or cost award a statute actually makes available to them—in the prayer for relief of a complaint that states a claim. But they may not plead a remedy as its own cause of action.

**D. The Unbriefed Federal Claims Against Millsap & Singer Fail for the Same Reasons.**

M&S reads the Complaint to name it only in Count VIII. Doc. 9 ¶ 2. The Complaint reaches further: Count IV (TILA) runs against "all Defendants" and names "Millsap Singer" in its allegations, Doc. 5 at 21; *id.* ¶¶ 99–100; Count VI (FDCPA) names M&S in its heading and its allegations, *id.* at 26; *id.* ¶ 117; Counts IX and X run against all defendants, *id.* at 29–30; and ¶ 26 alleges that all defendants conspired. Count I's heading names only the Bell Bank entities, *id.* at 12, but ¶¶ 53–54 also refer to M&S. Count VIII is addressed in note 15 and Part III.F; its disposition there moots M&S's motion, including the alternative request for a more definite statement under Fed. R. Civ. P. 12(e). The question here is what to do with the federal counts M&S did not brief.

As to the federal counts it did not brief, M&S stands in the position of a non-moving defendant, and this district dismisses claims against defendants "who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Sallaj v. Howard*, No. 25-1119-DDC-BGS, 2026 WL 214346, at *9 (D. Kan. Jan. 27, 2026) (quoting *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981)); *see Minshew v. Krumme*, 825 F. Supp. 3d 1223, 1233 n.3 (D. Kan. 2026) (deciding an argument raised by one defendant as to all defendants, including those that had moved to dismiss the same claim only on other grounds, because "the court's legal holding applies equally to all defendants"); *Sipple v. Zevita*, No. 23-4038-HLT, 2023 WL 4706621, at *5–6 (D. Kan. July 24, 2023) (dismissing, for lack of subject-matter jurisdiction, claims against an unserved, non-moving defendant where the defendant was similarly situated to the moving defendants, the controlling issues were fully briefed, and the pro se plaintiffs had "a full and fair opportunity to explain . . . why their claims should survive dismissal").

Those conditions are met here, because each federal count against M&S fails for a reason that Bell Bank raised and that also defeats the count against Bell Bank. The TILA claim against M&S fails because the Complaint pleads no consumer credit. *See* Part III.B.1. The FDCPA claim against M&S fails because the Complaint pleads no consumer "debt," *see* Part III.B.1, and, as with the claim against Bell Bank, because it identifies no act that the statute prohibits—filing a foreclosure petition on a loan the Complaint alleges was later reinstated is not, without more, an FDCPA violation. Nor does the Complaint allege facts showing that M&S failed to provide the validation information Regulation F requires. *See* Doc. 5 ¶ 27; 12 C.F.R. § 1006.34. The Court need not decide

whether M&S is a "debt collector." *Cf. Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 479 (2019) (leaving open "whether those who judicially enforce mortgages fall within the scope of the primary definition" of a debt collector). Count I fails against M&S for the reasons given in Part III.A: the Complaint alleges no facts suggesting that M&S intended to discriminate on the basis of race, a defect Bell Bank raised, Doc. 14 at 8–9, or that race was the but-for cause of anything M&S did.

Resolving these counts now is also fair to the Mendys, who had notice of every defect and an opportunity to cure. The Tenth Circuit permits a sua sponte dismissal under Rule 12(b)(6)—one entered "without affording the plaintiff notice or an opportunity to amend"—only when it is "patently obvious" that the plaintiff could not prevail on the facts alleged and allowing an opportunity to amend would be futile. *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110); *see Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (applying that standard to affirm the sua sponte dismissal of a pro se borrower's claims against non-moving defendants, including her lenders' foreclosure counsel).

The standard is strict because a sua sponte dismissal comes without the "notice and opportunity to amend" that a motion to dismiss provides. *Hall*, 935 F.2d at 1110. The Mendys had that notice here. Bell Bank's motion raised defects that independently defeat each federal claim against M&S, including the absence of consumer credit, Doc. 14 at 10–12; the Mendys responded to that briefing, Doc. 18 at 5–6; they could have amended as of course or moved for leave to amend, *see* Part III.G; and the dismissal is without prejudice. They have had a full and fair opportunity to be heard, and the Court therefore need not decide whether the stricter standard for dismissals entered without notice would be met.

Nor does resolving these counts on Bell Bank's briefing offend the party-presentation principle. Under that principle, courts "rely on the parties to frame the issues for decision" and act as "neutral arbiter[s] of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). But the principle "restricts courts from raising new issues"; it "does not say that once an issue has been raised and responded to, a court must render its decision in accordance with the position of one of the parties." *United States v. Cortez-Nieto*, 43 F.4th 1034, 1052 (10th Cir. 2022); *see Markley v. U.S. Bank Nat'l Ass'n*, 142 F.4th 732, 742–43 (10th Cir. 2025) (finding no violation where the district court granted a motion to dismiss "on a different ground than the one that [the movant] initially raised"); *Minshew*, 825 F. Supp. 3d at 1233 n.3 (dismissing a claim "against all defendants, notwithstanding any party-presentation concerns," where only one defendant had raised the dispositive argument). Count I (to the extent it arises under § 1981), Counts IV and VI, and Count VIII (to the extent it arises under 12 C.F.R. § 1024.41) are therefore dismissed without prejudice as to M&S for the reasons given in Parts III.A and III.B and note 15, and Counts IX and X are dismissed without prejudice as to M&S for the reasons given in Part III.C.

**E. The Unserved Doe Defendants Are Dismissed.**

The Complaint names Does 1 through 20 but never identifies any of them, and none has been served. *See* Docs. 8, 10. The federal counts fail against the Doe defendants for the same reasons they fail against the named defendants, and the state-law counts against the Doe defendants are dismissed for the reasons given in Part III.F. The claims against Does 1 through 20 are dismissed without prejudice.

**F. The Court Declines Supplemental Jurisdiction over the State-Law Counts.**

Counts II (breach of contract), III (breach of the duty of good faith and fair dealing), VII (fraud), and VIII (wrongful foreclosure)[15] arise under Kansas law, and the Court's jurisdiction over them is supplemental. *See* 28 U.S.C. § 1367(a); Doc. 5 ¶¶ 3, 5 (invoking supplemental jurisdiction over "the state claims" and "State law claims"); *id.* ¶ 87 (alleging that the duty underlying Count III "is also required by Kansas law"); Doc. 18 at 6 (referring to the Mendys' "remaining common law claims"). Count I also invokes "Kansas State law prohibiting Discrimination in Contract." Doc. 5 ¶ 41; *see id.* ¶¶ 31, 53. To the extent Count I asserts a Kansas-law claim, that claim is likewise supplemental. The Complaint invokes only federal-question jurisdiction, and it pleads no basis for diversity: it alleges that both Mendys are Kansas citizens and that M&S is "domiciled" in Kansas, Doc. 5 ¶¶ 14–15, and it says nothing about the citizenship of M&S's members, which is what determines a limited liability company's citizenship. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) (applying *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)).

A district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). That is because

[15] Count VIII cites no statute, and the Mendys defend it under Kansas law. *See* Doc. 18 at 7 (acknowledging that "Kansas has not formally recognized an independent tort denominated 'wrongful foreclosure'" and invoking claims that "Kansas law plainly recognizes"). Count VIII's reference to "dual tracking," Doc. 5 ¶ 136, describes conduct that Regulation X restricts, but to the extent Count VIII could be read to assert a claim under 12 C.F.R. § 1024.41, it fails for the reasons given in Part III.B.3.

"[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (internal quotation marks omitted) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021).

The Court sees no compelling reason to keep these counts. The case is at the pleading stage, and discovery was stayed. Doc. 22. And the state-law counts present questions best answered by a Kansas court—among them whether Kansas recognizes a tort of wrongful foreclosure at all, a question on which the Kansas Court of Appeals has said only that it is "not apprised of any legal authority in Kansas that has recognized the tort of wrongful foreclosure." *Deutsche Bank Nat'l Tr. Co. v. Drake*, No. 115,402, 404 P.3d 372 (table), 2017 WL 4700335, at *6 (Kan. Ct. App. Oct. 20, 2017) (unpublished), *rev. denied* (Kan. Apr. 25, 2018). The Court therefore declines to exercise supplemental jurisdiction over Counts II, III, and VII, and over any Kansas-law claim in Counts I and VIII, and dismisses them without prejudice as to all defendants. The Court expresses no view on their merits.

Section 1367(d) tolls the limitations period for a claim dismissed under § 1367(c) while the claim is pending in federal court and for 30 days after its dismissal, unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d); *see Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) (holding that § 1367(d) "stop[s] the clock" on the state limitations period while the claim is pending in federal court). How that provision or any Kansas tolling rule applies to these claims is a question for the court in which they are refiled.

**G. The Court Denies the Informal Requests to Amend.**

"[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice," and "a careful judge will explain the pleading's deficiencies so that a [plaintiff] with a meritorious claim can then submit an adequate complaint." *Gee*, 627 F.3d at 1186. This Order follows that course: every federal count is dismissed without prejudice, and the Court has explained, count by count, why each fails. The Court does not find that amendment would necessarily be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (dismissal with prejudice is appropriate where "granting leave to amend would be futile"). The loan's purpose is a question of fact, and the defects in Count I are factual gaps that a new pleading could fill.

That the Complaint borrows most of its allegations from another case, *see supra* note 13, does not change this. The borrowed pleading does not show what the Mendys could allege about their own loan. The allegations specific to this loan—the payoff and the disputed April 2026 default, the dual tracking, the liquidation of assets, the post-reinstatement escrow, Doc. 5 ¶¶ 68–69, 73, 79, 100(c), 126—show that they can describe their loan. But those allegations do not plausibly allege a consumer purpose for the loan secured by 2923 W. 50th Street, and they allege no fact tying its servicing to race.

Whether to grant leave to amend in this case is a separate question, and on this record the answer is no. The Mendys asked for leave to amend inside their response briefs. Doc. 16 at 5–6; Doc. 18 at 1, 7–8. The Court denies those requests. "[N]ormally a court need not grant leave to amend when a party fails to file a formal motion," and any request must give the court and the opposing parties adequate notice of the basis of the proposed amendment. *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999) (footnote omitted). A request for leave made "as alternative

relief" in a response to a motion to dismiss "does not rise to the status of a motion." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370–71 (10th Cir. 1989); *accord Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court."). In this district, a motion to amend must attach the proposed amended pleading. D. Kan. Rule 15.1(a)(2); *see Calderon*, 181 F.3d at 1186 n.1. Courts deny leave when a plaintiff does not, *see Brooks*, 985 F.3d at 1282–83, including when the plaintiff is pro se, *see Vazquez*, 2022 WL 1597812, at *2; *cf. Requena v. Roberts*, 893 F.3d 1195, 1204 n.3 (10th Cir. 2018) (requiring a pro se plaintiff to file a written motion for leave to amend).

The Mendys filed no motion and no proposed amended complaint. Nor did they amend once as a matter of course, as Fed. R. Civ. P. 15(a)(1)(B) permitted them to do within 21 days after service of a Rule 12(b) motion. *See Brooks*, 985 F.3d at 1282–83. Even measured from the later of the two motions—Bell Bank's, served June 23, 2026—that window closed in July 2026, and the Mendys filed no amended pleading. The Tenth Circuit's observation about the plaintiffs in *Glenn*, who likewise let that opportunity pass, applies here: "Obviously, either they had no additional facts or they felt they had stated a claim." 868 F.2d at 370. The requests in the Mendys' briefs therefore do not put the question of amendment before the Court.

The Mendys respond that Bell Bank has shown no undue delay, bad faith, repeated failure to cure, prejudice, or futility. Doc. 18 at 7–8. Those are the considerations that guide a court's discretion when a motion for leave to amend is before it. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). They do not answer the threshold question whether such a motion has been made, and the Tenth Circuit has

rejected the argument that a bare request in a response brief should be treated as one because it "serve[s] an important function." *Brooks*, 985 F.3d at 1283; *see also Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (a court may deny leave "where a plaintiff fails to file a written motion and instead 'merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm'" (quoting *Garman ex rel. Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010))).

The briefs also do not identify the facts an amendment would add. A plaintiff seeking leave must "specify the new factual allegations that would correct the defects in their [complaint]," and a general assurance that additional facts would be alleged does not suffice. *Carroll ex rel. AKC v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1231–32 (10th Cir. 2015) (quoting *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014)). The Mendys assert that they can supply the names of Bell Bank employees, dates of communications, mortgage statements, and emails. Doc. 18 at 6–7. But that offer appears in the section of their brief defending the fraud count, *id.*—a Kansas-law claim the Court does not reach, *see* Part III.F—and they do not say what those materials would show. As to the federal counts, the briefs offer nothing that would cure the defects. Neither brief says what the loan was for. And the additional matter the response describes in defense of Count I—"unnecessary obstacles to refinancing" and a requirement of "an additional borrower after substantial underwriting had already occurred," Doc. 18 at 5—is no more tied to race than the allegations already in the Complaint. *See* Part III.A.

That leaves the Mendys' pro se status. It does not entitle them to leave to amend on this record. The Tenth Circuit has said that "pro se parties generally should be given leave to amend." *Knight*, 749 F.3d at 1190. The rule protects a self-represented plaintiff

who may have left out an element he did not know he needed. *See Hall*, 935 F.2d at 1110. But the cases enforcing that rule have generally involved a dismissal with prejudice or a dismissal entered before the plaintiff had notice of the pleading's defects, and neither is present here.

Because a dismissal with prejudice forecloses amendment altogether, "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice." *Gee*, 627 F.3d at 1186. On that ground, *Gee* reversed in part a dismissal with prejudice entered on a motion to dismiss, holding that the district court "should have afforded Mr. Gee the opportunity to amend his complaint before dismissing every claim with prejudice." *Id.* at 1181, 1195. The dismissal here is without prejudice. The Court's decision not to grant leave to amend on this record does not convert it into a dismissal with prejudice, because "denial of leave to amend and dismissal with prejudice are two separate concepts." *Brereton*, 434 F.3d at 1219 (holding that a plaintiff's inability to amend his complaint to establish standing justified denying leave to amend but not dismissing with prejudice).

Nor is this a dismissal entered before the plaintiff had notice of the pleading's defects. The Tenth Circuit has said that dismissing a pro se complaint for failure to state a claim "is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). It has also said that a pro se plaintiff "should be allowed to amend his complaint" when his "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him." *Hall*, 935 F.2d at 1110. Both statements assume a plaintiff who has not been told what his pleading lacks. *Perkins* reviewed a dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii)

entered "before the complaint was served on defendants." 165 F.3d at 805. *Hall* distinguished Rule 12(b)(6) dismissals, which "typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint," from sua sponte dismissals, which come without that notice and so must meet the futility standard. 935 F.2d at 1109–10. The Tenth Circuit drew the same line in *Serna v. Denver Police Department*, 58 F.4th 1167 (10th Cir. 2023), holding that the plaintiff's pro se status did "not affect" the denial of leave to amend. *Id.* at 1172 n.4. The cases the plaintiff relied on "involved sua sponte dismissals of a pro se complaint, with no motion to dismiss filed by the defendant." *Id.* In his case, by contrast, "defendants filed a motion to dismiss that notified [him] of the defect in his . . . claim, providing him with an opportunity to amend his complaint." *Id.* Bell Bank's motion did the same here, identifying, for every federal count, a defect that independently requires dismissal. The Mendys responded to that motion, but they neither amended as of course under Rule 15(a)(1)(B) nor filed a motion for leave to amend with a proposed amended complaint.

Nor does the Mendys' pro se status excuse them from filing a proper motion. The Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)), and it has applied the formal-motion requirement to pro se plaintiffs who, like the Mendys, were on notice of their pleading's defects. *See Requena*, 893 F.3d at 1208 ("Whatever prompted him to forgo a motion to amend, it was not a lack of notice."); *id.* at 1204 n.3 ("He should have filed a written motion for leave to amend, giving adequate notice of the basis of the proposed amendment. Although *Garman* and *Calderon* were counseled cases, we have applied

them to pro se plaintiffs." (citations omitted)); *Serna*, 58 F.4th at 1172 & n.4 (affirming denial of leave where the pro se plaintiff's "fleeting request did not identify with specificity what the basis for [the amended] claims would be," he "never separately filed a motion with a proposed amended complaint" as Rule 15(a)(2) and the District of Colorado's local rule required, and the defendants' motion to dismiss had "notified [him] of the defect").

Because the dismissal is without prejudice, nothing in this Order prevents the Mendys from filing a new action that alleges the facts of their own loan.

## IV. CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED BY THE COURT** that Bell Bank's Motion to Dismiss (Doc. 13) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. The motion is granted as to Count I to the extent it arises under 42 U.S.C. § 1981, as to Counts IV, V, VI, IX, and X, and as to Count VIII to the extent it arises under 12 C.F.R. § 1024.41. It is denied as moot as to the state-law claims.

**IT IS FURTHER ORDERED** that Defendant Millsap & Singer, LLC's Motion to Dismiss or in the Alternative for a More Definite Statement (Doc. 9) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' requests for leave to amend, made in their response briefs (Doc. 16 at 5–6; Doc. 18 at 1, 7–8), are **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** as to all defendants, including Does 1 through 20. The federal claims—Count I to the extent it arises under 42 U.S.C. § 1981; Counts IV, V, and VI; and Count VIII to the extent it arises under 12 C.F.R. § 1024.41—and Counts IX and X are

dismissed for failure to state a claim for the reasons given in Parts III.A through III.E and note 15. The state-law claims—Counts II, III, and VII, and Counts I and VIII to the extent they arise under Kansas law—are dismissed because the Court declines to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(c)(3). The Clerk shall enter judgment and close the case.

**IT IS SO ORDERED.**

Dated this 27th day of October, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge